### Rudy FLETCHER, Plaintiff,

v.

### The CITY OF NEW YORK, a municipal entity, The New York City Housing Authority, a municipal corporation, Police Officer Jeffrey Cousin, Shield # 3709, individually and in his capacity as a Police Officer, Police Officers

"John" Balestrieri and "John" Ruiz, first names and shield numbers unknown, individually and in their official capacities as Police Officers, and Police Officers John Does, whose names and shield numbers are unknown, individually and in their official capacities as Police Officers, Defendants.

No. 95 Civ. 2515(RMB).

United States District Court,
S.D. New York.

June 22, 1999.

**330**

Paul D. Carpenter, Office of Regina L. Darby, New York City, for plaintiff Rudy Fletcher.

Kelby N. Bowman, Jackson & Consumano, New York City, for defendants Jeffrey Counsin, Vincent Balestrieri, Ernesto Ruiz, Paul Pagan, John Newland, Daniel Sosnowick and Kevin Finucane.

Anna Zetlin, Corporation Counsel of the City of New York, New York City, for defendant City of New York.

Barry J. Reiber, New York City, for defendant NYC Housing Authority.

### DECISION AND ORDER

BERMAN, District Judge.

### I. *INTRODUCTION*

Plaintiff Rudy Fletcher ("Plaintiff" or "Fletcher") has filed a motion in limine for an order precluding from trial introduction of evidence of his prior criminal convictions and prior drug use; and for an order admitting into evidence the entire personnel records of the individual police officer defendants; as well as the 1994 so-called Mollen Commission Report and police training manual. Defendants have cross-moved, in limine, seeking the admission of Plaintiff's prior criminal convictions (and use of aliases) and drug use; and precluding use at trial of the personnel records of the individual police officer defendants and the Mollen Commission Report.

**For the reasons set forth below, Plaintiff's motion is granted in part and denied in part; and Defendants' motion is granted in part and denied in part.[1]**

### II. *DISCUSSION*

#### A. Criminal Convictions and Use of Aliases

Defendants' seek to introduce into evidence the following criminal convictions of Plaintiff in order to impeach his credibility: (i) August 10, 1990 conviction for invalid use of a credit card with fraudulent intent, a Class–A misdemeanor under New York Penal Law § 165.15(1); (ii) March 26, 1991 conviction for criminal possession of a controlled substance, a Class–A misdemeanor under New York Penal Law § 220.03; (iii) February 24, 1992 conviction for intent/fraudulent obtaining transportation without paying, a Class–A misdemeanor under New York Penal Law § 165.15(3); (iv) April 29, 1993 guilty plea to intent/fraudulent obtaining transportation without paying, a Class–A misdemeanor under New York Penal Law § 165.15(3); and (v) June 29, 1993 guilty plea to at-

1. In reaching this decision the Court has reviewed, among other things, the following submissions: Brief in Support of Plaintiff's Motion and in Opposition to Defendants' Motion (undated); Defendant New York City Housing Authority and Defendant New York City Housing Authority Officers' Memorandum of Law in Support of Defendants' Motion in Limine dated March 22, 1999; Memorandum of Law in Support of Defendant's Opposition to Plaintiff [sic] Motion in Limine Regarding Evidence of Criminal Convictions of Plaintiff dated March 29, 1999; Plaintiff's supplemental letter dated May 27, 1999; Defendants' supplemental letter dated May 26, 1999; and the joint statement of Plaintiff and Defendants dated June 14, 1999 ("Joint Statement").

tempted robbery in the second degree, a Class–D felony under New York Penal Law § 110/160.0. (Joint Statement, pp. 2–3). Defendants also seek to introduce into evidence eighteen (18) aliases used by Plaintiff; Plaintiff used these aliases in connection with the commission of the (five) crimes listed above, as well as other (criminal) activities that are too remote in time to be admitted into evidence.[2]

### 1. Crimes Involving Dishonesty or False Statement

Relying on Federal Rules of Evidence ("Fed.R.Evid.") 403 and 609, Plaintiff seeks to preclude from trial evidence of his prior criminal convictions asserting they are "irrelevant" and that their probative value is "substantially outweighed by the danger of unfair prejudice to the witness." (Pl.Br., p. 3). Fed.R.Evid. 609(a)(2) provides, however, that "[f]or the purposes of attacking the credibility of a witness, ... (2) evidence that any witness has been convicted of a crime **shall be admitted if it involved dishonesty or false statement,** regardless of the punishment." (emphasis added). Fed.R.Evid. 609(a)(2) mandates the admission of evidence of all prior convictions involving dishonesty or false statement, "whether the conviction was a felony or misdemeanor." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 609.03[1] (2nd ed.1998). "[T]he courts have now clearly held that the trial court lacks discretion pursuant to Rule 403 in this instance, and that a cross-examiner has an absolute right to introduce a conviction involving dishonesty or false statement for impeachment purposes." *Id.*

 Whether a crime involved dishonesty or false statement is a factual determination for the Court. "In evaluat-

ing a state conviction, the federal court must look to the elements of the crime that the prosecutor had to prove, not the details of the particular crime committed, to determine whether the conviction involved dishonesty." *Id.* The proponent of the evidence bears the burden of demonstrating that the conviction was for a crime that involved dishonesty or false statement. *Id. See also United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.1977), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977) ("[i]f the title of an offense leaves room for doubt, a prosecutor desiring to take advantage of automatic admission of a conviction ... must demonstrate to the court 'that a particular prior conviction rested on facts warranting the dishonesty or false statement description' "). Here, the "titles" of certain of Plaintiff's convictions suggest crimes of dishonesty: Plaintiff's August 10, 1990 conviction for invalid use of a credit card; his February 24, 1992 conviction for intent/fraudulent obtaining transportation without paying; and his April 29, 1993 guilty plea to intent/fraudulent obtaining transportation without paying. The Court seeks additional information concerning these crimes, particularly as to any dishonesty or false statement involved. Therefore, at the forthcoming pre-trial conference on June 30, 1999 (at 10:30 a.m.), the Court will hold a further hearing concerning these criminal convictions and will make a determination as to their admissibility at that time. *Cf. United States v. Rivers,* 693 F.2d 52, 54 (8th Cir.1982) (held that trial court was justified in delaying it's ruling because "[t]he trial court at the time of the motion in limine did not have the facts necessary to determine whether the prior convictions should be admitted for purposes of impeachment under Rule 609(a)"). Counsel

---

2. Based on the parties' written submissions, it does not appear that Defendants seek to have Plaintiff's criminal convictions, other than the five listed herein, admitted into evidence. All five of those convictions occurred within the last ten years. Thus, the Court need not consider the ten year time limit set forth in Fed.

R.Evid. 609(b). *See generally Zinman v. Black & Decker (U.S.), Inc.,* 983 F.2d 431, 434 (2d Cir.1993) (Congress intended that convictions more than ten years old "be admitted 'very rarely and only in exceptional circumstances.' ") (citations omitted).

should be prepared to discuss these three convictions in further detail, including the elements of the crimes that the prosecutors had to prove.

### 2. Crimes Not Involving Dishonesty or False Statement

Plaintiff's March 26, 1991 conviction for criminal possession of a controlled substance is a Class–A misdemeanor under New York Penal Law § 220.03.[3] New York Penal Law § 70.15 provides that the sentence of imprisonment for a Class–A misdemeanor "shall not exceed one year ..." Therefore, as this crime did not involve dishonesty or fraud and was not "punishable by death or imprisonment in excess of one year," it is inadmissible under Fed. R.Evid. 609(a). *See, e.g., United States v. Estes,* 994 F.2d 147, 149 (5th Cir.1993) (state misdemeanor conviction punishable by imprisonment for "no more than one year" is inadmissable under Fed.R.Evid. 609(a)); *United States v. Hayward,* 6 F.3d 1241, 1253 (7th Cir.1993), *cert. denied,* 511 U.S. 1004, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994) (misdemeanor conviction not admissible under Fed.R.Evid. 609(a) to attack credibility because it did not involve dishonesty or false statement).

█ Plaintiff's June 29, 1993 guilty plea to attempted robbery in the second degree is not a crime that involves dishonesty or false statement and is, therefore, inadmissible under Fed.R.Evid. 609(a)(2). *See United States v. Smith,* 551 F.2d 348, 362–63 (D.C.Cir.1976) (robbery is not a crime characterized by "crimen falsi"). *See also United States v. Begay,* 144 F.3d 1336, 1338 (10th Cir.1998) ("prior robbery conviction is not automatically admissible under Rule 609(a)(2)"); *United States v. Grandmont,* 680 F.2d 867, 871 (1st Cir.

1982) ("robbery per se is not a crime of dishonesty within the meaning of 609(a)(2)"). However, under Fed.R.Evid. 609(a)(1) "prior convictions of *all* witnesses other than a criminal defendant, if punishable by death or imprisonment in excess of one year and not involving dishonesty or false statement, ... shall be admitted subject to Rule 403." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 609.04[3][a] (2nd ed.1998). Fed.R.Evid. 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ..." The District Court has "broad discretion" in making decisions under Fed.R.Evid. 403. *Ismail v. Cohen,* 706 F.Supp. 243, 253 (S.D.N.Y.1989), *aff'd,* 899 F.2d 183 (2d Cir. 1990). Here, applying the Rule 403 balancing test[4], the Court concludes that the prejudicial effect of Plaintiff's guilty plea to attempted robbery in the second degree substantially outweighs it's probative value and should, therefore, be excluded from evidence.

### 3. Specific Instances of Misconduct

█ In their written submissions, Defendants also state that it is their intention "to question plaintiff on specific instances of conduct pursuant to Federal Rules of Evidence 608(b) for each arrest of the plaintiff ..." (Joint Statement, p. 1). While Defendants do no seek to introduce evidence concerning Plaintiff's criminal convictions that are more than ten years old, they do wish to inquire into "the specific instances of conduct" that resulted in these convictions. (Joint Statement, p. 3). Defendants contend that "[w]ith respect to inquiries regarding the underlying acts

---

**3.** "Convictions for narcotic offenses are usually not considered to involve dishonesty or false statement." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 609.03[2][b][iii] (2nd ed.1998). *See also Hayes,* 553 F.2d at 827–828 (barring conviction for importation of cocaine under Fed. R.Evid. 609(a) because government failed to provide specific facts relating to dishonesty or false statement).

**4.** "[T]he ordinary balancing test of Rule 403 is sufficient protection when the witness is not a criminal defendant ..." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 609.04[3][a] (2nd ed.1998).

constituting plaintiff's plea of guilty to criminal offenses, [Fed.R.Evid.] 608 governs." (Def.Br. in Opp., p. 3). Defendants' contention in this regard is unpersuasive. It is clear that "misconduct not culminating in a conviction cannot be proved by extrinsic evidence, **but misconduct that has been the basis of a conviction may be so proved under the detailed provisions of Rule 609.**" 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 608.12[1] (2nd ed.1998).[5] (emphasis added). Thus, with respect to any misconduct that resulted in criminal convictions, Defendants may cross-examine Plaintiff concerning only those crimes which the Court may find admissible, if any, under Fed.R.Evid. 609.

### 4. Aliases

■ Fed.R.Evid. 608(b) provides that specific instances of the witness' conduct may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness ..." Courts have held that "[a] witness' use of false names or false identities is a proper subject of cross-examination under Fed.R.Evid. 608." *United States v. Mansaw*, 714 F.2d 785, 789 (8th Cir.1983), *cert. denied*, 464 U.S. 964, 104 S.Ct. 403, 78 L.Ed.2d 343 (1983). *See also Young v. Calhoun*, 1995 WL 169020 at *5 (S.D.N.Y. Apr.10, 1995) ("[a] witness' use of false names or identities is the proper subject of cross-examination under Rule 608"). The Court of Appeals for the Ninth Circuit put it well, reasoning that:

> The issue is whether the use of false names bears directly enough upon the witness' veracity as to outweigh the general prohibition against cross-examining about particular acts of misconduct other than convictions of a crime. We

think it does. If a man lie about his own name, might he not tell other lies?

*Lyda v. United States*, 321 F.2d 788, 793 (9th Cir.1963).

Plaintiff expresses concern that Defendants effort to introduce all eighteen (18) aliases into evidence will simply alert the jury to certain arrests and/or convictions that would not otherwise be admissible. (Joint Statement, p. 5). However, Defendants may inquire into Plaintiff's use of aliases, "without eliciting the fact that plaintiff was arrested and/or convicted for prior criminal conduct in connection with the use of these aliases." *Young*, 1995 WL 169020 at *5. Accordingly, **with this limitation**, all eighteen (18) of Plaintiff's aliases are admissible under Fed.R.Evid. 608(b).

### B. Prior Drug Use

■ Plaintiff argues against the introduction of evidence as to his prior drug use, asserting that the only purpose for which the Defendants could offer evidence of Plaintiff's prior drug use "is to prove action in conformity with character that Rule 404(a) expressly forbids. Additionally, this evidence fails under Rule 403 in that 'the danger of undue prejudice outweighs the probative value of the evidence.'" (Pl.Br., pp. 6–7).

Plaintiff, in the Court's view, mischaracterizes the relevant rules. Fed.R.Evid. 404(b) bars the admission of evidence of past "bad acts" to show that the actor acted in conformity therewith in the present instance, "but allows the introduction of such evidence for **other purposes.**" *Lewis v. District of Columbia*, 793 F.2d 361, 363 (D.C.Cir.1986) (emphasis added). In *Lewis*, the plaintiff brought an action for damages based on the alleged excessive force used by police officers in the course of an arrest. The trial court admitted evidence of plaintiff's history of drug use. Following plaintiff's appeal, the Court

---

**5.** The definition of "conviction" includes a plea of guilty. *Black's Law Dictionary* 333

(6th ed.1990).

of Appeals for the District of Columbia Circuit affirmed the ruling of the trial court holding that:

> Lewis' past use of drugs suggests that some of the suffering and nightmares he experienced following the shooting may have been proximately caused by drug withdrawal and not the shooting; the jury therefore would be aided by this evidence in measuring fairly the extent of damages.

*Id.*

In the instant case, as in *Lewis*, while the evidence of Fletcher's past drug use is not admissible to prove his bad character or to show that he acted in conformity therewith, it is admissible, under Fed. R.Evid. 404(b), with respect to what damages, if any, may have been proximately caused by Defendants.

Fed.R.Evid. 403 provides that even if evidence is admissible under other provisions, such as Rule 404(b), it is still inadmissible if its prejudicial effect substantially outweighs its probative value. The trial judge has "large discretion" in this weighing process. *Id.* Here, the probative value of Fletcher's past drug use outweighs the danger of unfair prejudice and will be admissible for the (limited) purpose described above.

### C. Personnel Records

Plaintiff seeks to have the personnel records of the individual defendant police officers admitted into evidence at the time of trial. (Pl.Br., p. 9). Defendants contend, however, "that the scope of the *discoverable* portions of the personnel folders was limited to that directed by the Court following an *in camera* review by [U.S. District Court] Judge Martin." [6] (Def.Br. in Support, p. 5). Defendants go on to state

that the "portions of the personnel folders that were deemed discoverable [by Judge Martin], were previously exchanged with plaintiff's counsel . . ." (Def.Br. in Support, p. 7). Plaintiff does not contest these statements. Thus, as distinguished from the cases cited in Plaintiff's brief, such as *Morrissey v. City of New York*, 171 F.R.D. 85 (S.D.N.Y.1997), **Judge Martin has already determined which portions of the personnel folders of the individual defendant police officers are discoverable and, therefore, admissible.**

Furthermore, the discovery deadline in this case was June 1, 1998. In a letter to Judge Martin, dated August 11, 1998, Fletcher's attorney informed the Court that discovery had been completed. In effect, Plaintiff's instant motion is an eleventh hour request to reopen discovery and disavow Judge Martin's earlier ruling. The Court will do neither. Thus, Plaintiff may use only those portions of the personnel files of the individual defendant police officers that Judge Martin deemed discoverable and that are **relevant** to the proceedings, subject to appropriate evidentiary objections at trial.

### D. Mollen Commission Report and Police Training Manual

Plaintiff seeks the admission into evidence of pertinent portions of the Mollen Commission Report [7] and the New York Police Department police training manual to prove that there is a "code of silence" within the police department as well as "inadequate police training." (Pl. Br., p. 13). Evidence concerning the Mollen Commission Report and any police training manual appears to be directly related to Fletcher's "*Monell* claims" against the City of New York and the New York City Housing Authority.[8]

---

6. This case was reassigned from United States District Judge John S. Martin to this Court in December, 1998.

7. "The Mollen Commission was established to investigate corruption in the NYPD and make recommendations for changes to prevent further NYPD corruption." *Yanez v. The City of*

*New York*, 29 F.Supp.2d 100, 111 (E.D.N.Y. 1998).

8. The Court of Appeals for the Second Circuit has held that " '[i]n order to establish the liability of a municipality in an action under § 1983 for unconstitutional acts by a municipal employee below the policymaking level, a

In the case at bar, on December 10, 1997, Judge Martin (orally) granted defendant City of New York's request to bifurcate Fletcher's "*Monell* claims" and stay all "*Monell* discovery."[9] Thus, the Mollen Commission Report and police training manual are not properly admissible in the instant (non-*Monell*) portion of the action against the individual police officer defendants.[10] *See Shaw v. City of New York*, 1997 WL 187352 (S.D.N.Y. Apr.15, 1997) (citing *Bryant v. New York City*, 92 CV 0960 (E.D.N.Y. Oct. 27, 1994); *Williams v. City of New York*, 94 Civ. 6234 (S.D.N.Y. Sept. 6, 1996); *Jackson v. City of New York*, 93 CV 174 (E.D.N.Y. Apr. 24, 1996); for the proposition that the Mollen Commission Report should not be admitted into evidence when there is no [pending] *Monell* claim).

## III. *CONCLUSION*

Accordingly, **as more fully set forth above,** it is hereby ordered that:

(1) On June 30, 1999 at 10:30 a.m., the Court will hold a further hearing concerning the admissibility of Plaintiff's convictions for the following crimes: (a) August 10, 1990 conviction for invalid use of a credit card; (b) February 24, 1992 conviction for intent/fraudulent obtaining transportation without paying; and (c) April 29, 1993 guilty plea to intent/fraudulent obtaining transportation without paying;

(2) Plaintiff's convictions for the following crimes are not admissible: (a) March 26, 1991 conviction for criminal possession of a controlled substance; and (b) June 29,

1993 guilty plea to attempted robbery in the second degree;

(3) Defendants may inquire, on cross-examination, into Plaintiff's use of aliases;

(4) Evidence of Plaintiff's past drug use is admissible with respect to the issue of damages;

(5) Plaintiff may introduce (only) those portions of the personnel files of the individual defendant police officers that Judge Martin deemed discoverable and that are relevant to the proceedings, subject to appropriate evidentiary objections at trial; and

(6) The Mollen Commission Report and police training manual are not admissible in this portion of the proceedings.

---

plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy.' " *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996), *cert. denied*, 520 U.S. 1155, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997) (citation omitted). *See also Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' ...").

**9.** Judge Martin's oral Order of December 10, 1997, was memorialized when he memo endorsed a letter from the City of New York Law Department, dated October 15, 1998. This memo endorsement was "docketed" on or about October 19, 1998.

**10.** The Court expresses no opinion as to whether or not this evidence will be admissible in subsequent proceedings, if any, against the municipal defendants on the "*Monell* claims."